DAVIS *et al.*, commissioners, *v.* VERNON SHELL ROAD
COMPANY.

1. A turnpike company chartered by the laws of the State is subject to general police regulations prescribed by the legislature; and a statute enacted after the grant of such charter, providing a remedy by proceedings for damages or to forfeit the charter on account of a failure of the company to discharge its obligation to the public, does not impair the obligation of any contract, provided such act does not materially abridge the rights of the company or increase its burdens.
2. It is the duty of the Vernon Shell Road Company, growing out of its chartered franchises, to maintain and keep in suitable repair its road for the safe, convenient and comfortable use of the public as a highway, and for a failure to do so an action will lie against it by the commissioners of turnpikes of Chatham county, under the provisions of section 647 of the Political Code.

Argued January 25, — Decided March 3, 1898.

Action to forfeit charter, etc. Before Judge Callaway. Chatham superior court. March term, 1897.

The commissioners of turnpikes of Chatham county brought suit under the Political Code, § 647. The defendant demurred on the grounds: (1) It holds its charter under acts of the legislature passed in 1859, whereas the law under which the action was brought was passed in 1879. (2) The complaint fails to allege a violation of its charter on the part of the defendant. (3) Under the charter the defendant has vested rights, as set out in the declaration. The demurrer was sustained. The petition alleges, that the defendant was incorporated by the legislature, and by its charter authorized and empowered to construct, build and maintain a shell road from the city of Savannah to White Bluff, otherwise called Vernonburg, on the Vernon river in Chatham county, to be constructed and laid on and over the bed of the White Bluff road, and to charge toll for the use of the road and for passing over the same. Defendant is and has been for years exercising the privileges granted by its said charter, namely, charging toll for the use of the road and for passing over the same. Said turnpike maintained and operated by defendant is, and has been for two years or more, neglected and suffered to be and remain "in a condition that it can not be traveled over comfortably and

drayed over successfully." On September 5, 1896, plaintiffs notified the toll-gate keeper of the turnpike of defendant of the condition of the same, and that unless such road was immediately repaired and put in good condition petitioners would proceed against said road under the statute. Said turnpike maintained and operated by defendant has not been repaired and put in good condition since the service of said notice.

W. H. Wade and J. R. Saussy, for plaintiffs.
D. B. Lester and J. R. Cain, for defendant.

LEWIS, J. The facts are stated in the official report.

1. The grant of chartered rights by one legislature to individuals can not prevent subsequent legislatures from enacting measures looking to the police regulation of incorporated companies thus created. The rights of a natural person are always subject to police regulation by the government, whenever, in the judgment of its legislative branch, the public interests require such action. There is no reason in law or justice why incorporated companies should not be subjected to the same rule. This is certainly true where a State, in the grant of corporate franchises, does not relinquish the right of its supervision and regulation of their exercise. Indeed the weight of authority, as well as reason, points to the conclusion that one legislature has not the power, by any contract entered into in an act creating a corporation, to so curtail the power of subsequent legislatures as to render it impossible for them to enact measures looking to the protection of the public against the abuse of corporate franchises. Legislation purely remedial in its character looking to a correction of such abuses, and which does not in any way impair the rights of the corporation or increase its burdens under a charter previously granted, is in no legal sense an ex post facto law, or a law which impairs the obligation of a contract. These principles are so well established that the following citation of authorities upon the subject will be sufficient without further argument. Tiedeman's Limitations of Police Power, 576 et seq.; Chicago Life Ins. Co. v. Needles, 113 U. S. 580; Whittemore v. Amoskeag Bank, 134 U. S. 526; Cutts & Johnson v. Hardee, 38 Ga. 350; Sparger

v. *Cumpton*, 54 *Ga.* 355–358. It is true that where a charter granted before the adoption of the Code of 1863 provides a remedy of a certain penalty for a breach of duty on the part of the corporation, this becomes a part of the contract between the State and the company, and subsequent legislatures have not the right to provide other remedies and penalties which would increase its burdens or abridge its rights; but where no such remedy is provided in the charter, it is always competent for the legislature to change the law as it existed at the time of granting a charter, both as to the manner of enforcing the right of the State, and as to the party in whose name the proceedings should be had. *Habersham Turnpike Co.* v. *Taylor*, 73 *Ga.* 552.

2. Under the original charter granted to the defendant in error in this case (Acts of 1859, p. 340), power was given it to build a shell road to be constructed and laid over a public highway in this State, and "to erect toll-gates across the same, and charge toll for the use of said road, and for passing over the same." It is insisted by counsel for the defendant in error, that this constituted a contract between the State on the one side and this defendant company upon the other. If so, manifestly there must have been some consideration moving each party to enter into the compact. The consideration actuating the company was the profits growing out of the high and important franchise requiring all travelers to pay for passage over this public highway. Obviously the consideration on the other hand was that the road-bed should be by the company kept in safe and suitable condition for public travel. Though there seem to be no express terms in the charter placing such an obligation upon the company, yet it is manifestly implied. Such franchises are never granted for the good and profit of a corporation alone, but the State also looks to the welfare of the public. To put it in the power of a private company to control a highway of this sort, and at the same time not to impose upon it the obligation to have regard for the public safety and convenience in the matter of keeping its road-bed in repair, could not have been within the legislative intent. Elliott on Roads and Streets, 59 et seq. For a violation of this obliga-

tion, as we have heretofore seen, the legislature has a right to prescribe a remedy. The remedy in this instance will be found in section 647 of the Political Code, which provides: "In all cases where turnpike roads are neglected and suffered to get into a condition that they can not be traveled over comfortably by travelers, and drayed over successfully, the commissioners aforesaid in the counties where such roads are, shall notify the keeper of the toll-gates on such road of the condition of the same, and unless such road is immediately repaired and put in good condition, such commissioners shall institute the proceeding provided for in section 646, and on the trial of said case, provided for in this section, if the fault or failure of such owner, company or corporation should be deemed insufficient to authorize the forfeiture of its charter, the measure of damages to the public may nevertheless be estimated in dollars and cents by the jury trying such case, judgment for which may be entered against such owner, company or corporation, and when collected shall be paid over to the county school commissioner and paid out as part of county school fund."

It is impossible for us to conceive in what particular the provisions of the statute above quoted either impair any obligation the State has ever been under to the defendant in error, or how it deprives the defendant of any substantial rights it has under its charter. We recognize the soundness of the doctrine advanced by Judge Warner in his dissenting opinion given in the case of *Cutts & Johnson* v. *Hardee*, 38 Ga. 350, above cited, to the effect that the General Assembly has not, under the form or guise of remedial legislation, the constitutional power to take away from a party any substantial right he had by virtue of his contract under the laws of the State existing at the time of its execution. But this is not true of the case we are now considering. The defendant in error has never had a right to enjoy its franchises and, at the same time, act in utter disregard of its obligations to the public. No one has ever a vested right to do a wrong. When this charter was granted, the State, independently of the statute above cited, had the right to institute proceedings for its forfeiture in the event of any flagrant abuse of its privileges by the corporation.

Therefore the proceeding to forfeit the charter was really no new remedy, though the statute places it in the hands of a different party in whose name the proceeding should be had. The alternative remedy of damages provided for in the statute is simply one less harsh than a forfeiture of its charter, which, upon the trial of the case, the jury would have the right to adopt, should it deem the fault or failure of the corporation insufficient to authorize a forfeiture of its charter. The provision is purely a police regulation in its character, which the State can never relinquish by mere implication to any of its corporate creatures. The object of the statute is not to impair the obligation of a contract, but to enforce the discharge of a public duty arising thereunder. It is not to infringe upon a private right, but to redress a public wrong.

Applying the above principles to the facts in this case, we think the petition set forth a sufficient cause of action, that the remedy adopted by proceeding under the above section was the correct one, and that the court erred in sustaining the demurrer.　　　*Judgment reversed.　All the Justices concurring.*