S94A0138, S94X0140. COASTAL GEORGIA REGIONAL DEVELOPMENT CENTER et al. v. HIGDON; and vice versa.

(439 SE2d 902)

CARLEY, Justice.

At issue in the instant appeals is the authority of the Department of Community Affairs (DCA) to conduct performance audits of appellant-defendants Coastal Georgia Regional Development Center (CGRDC) and Coastal Area District Development Authority, Inc. (CADDAI).

CGRDC is a "regional development center" as defined in OCGA § 50-8-31 (22). DCA's authority to conduct a performance audit of CGRDC derives from a 1989 enactment, which provides that DCA "shall conduct a performance audit of each regional development center at least once every three years." OCGA § 50-8-39.

CADDAI is a nonprofit corporation which was incorporated in 1976 for the purpose of administering a revolving loan program funded by a federal grant. Arrangements for CADDAI's incorporation were made by CGRDC, even though there was no express statutory authority in 1976 for CGRDC to do so. In 1992, however, such express statutory authority was enacted. OCGA § 50-8-35 (f) (1). The 1992 enactment also provided that DCA "shall conduct a performance audit of each nonprofit corporation at least once every three years." OCGA § 50-8-35 (f) (3).

In 1993, CGRDC and CADDAI refused to submit to performance audits conducted by DCA. In his official capacity, appellee-plaintiff Commissioner of DCA (Commissioner) brought suit to enjoin CGRDC's and CADDAI's hinderance of the performance audits.

The case was heard by the trial court sitting without a jury. As to CGRDC, the trial court found that DCA was authorized to conduct a full performance audit, inclusive of such of CGRDC's books and records as predated the 1989 effective date of OCGA § 50-8-39. As to CADDAI, however, the trial court found that DCA was only authorized to conduct a somewhat more limited performance audit, exclusive of CADDAI's loan files of "those borrowers [who] had [no] active files . . . as of [the 1992 effective date of OCGA § 50-8-35 (f)]." Based upon these findings, an order was entered enjoining hinderance of DCA's conduction of a full performance audit of CGRDC and a more limited performance audit of CADDAI. In Case No. S94A0138, CGRDC and CADDAI appeal and, in Case No. S94X0140, the Commissioner cross-appeals.

*Case No. S94A0138*

1. CADDAI urges that DCA only has the authority to conduct a performance audit of those nonprofit corporations which were created

by regional development centers after the 1992 effective date of OCGA § 50-8-35 (f) (1), and has no authority to conduct a performance audit of a nonprofit corporation, such as itself, which was created by a regional development center before the 1992 effective date of OCGA § 50-8-35 (f) (1).

OCGA § 50-8-35 (f) (1) is one of three separate paragraphs which comprise the 1992 enactment. It provides, in relevant part, that

> each [regional development] center is authorized to create nonprofit corporations to administer federal or state revolving loan programs or loan packaging programs. Each such nonprofit corporation must be authorized by the center's board and each unit of local government affected.

Nothing in this statutory provision addresses the authority of DCA to conduct a performance audit. The authority of DCA to conduct a performance audit is addressed only in OCGA § 50-8-35 (f) (3). Although CGRDC's creation of CADDAI predates enactment of OCGA § 50-8-35 (f) (1), it does not necessarily follow that DCA lacks current authority to conduct a performance audit of CADDAI. The authority of a regional development center to create a nonprofit corporation is an entirely separate issue from the authority of DCA to conduct a performance audit of a nonprofit corporation created by a regional development center. Accordingly, the relevant focus must be upon the scope of OCGA § 50-8-35 (f) (3) as the statutory authority for DCA to conduct performance audits, not upon OCGA § 50-8-35 (f) (1) as merely the express statutory authorization for what CGRDC has already previously accomplished.

OCGA § 50-8-35 (f) (3) specifically provides that DCA "shall conduct a performance audit of each nonprofit corporation at least once every three years." Nothing in this language limits the authority of DCA to auditing the performance of only such nonprofit corporations as were created after 1992 by regional development centers acting pursuant to OCGA § 50-8-35 (f) (1). If that had been the legislative intent, then it would have been a simple matter for the legislature to have given expression to it. For example, OCGA § 50-8-35 (f) (2) provides, in relevant part, that "[e]mployees and any other authorized representatives of *a nonprofit corporation created pursuant to paragraph (1) of this subsection* are authorized to expend nonpublic funds of such corporation" for certain specified purposes. (Emphasis supplied.) The use of the above emphasized language is obviously an expression of the legislative intent to limit the applicability of OCGA § 50-8-35 (f) (2) to only the employees and representatives of such nonprofit corporations as were created by regional development centers after 1992. If the intent had been to authorize

DCA to audit the performance of only such nonprofit corporations as were created by regional development centers after 1992, the legislature would presumably have employed the same or similar language in OCGA § 50-8-35 (f) (3). The failure of the legislature to have done so is an expression of its intent that the authority of DCA is not to be so limited, but is to extend to auditing the performance of all nonprofit corporations which were created by regional development centers regardless of the date of their incorporation.

> [W]here a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.

82 CJS 813, Statutes, § 366 (a).

Although CADDAI is a nonprofit corporation which was created by CGRDC prior to 1992, it nevertheless became a viable corporate entity when its articles of incorporation were filed with the Secretary of State. See OCGA § 14-3-203 (b). As a viable corporate entity which was previously incorporated in this state, CADDAI is not immune from compliance with this state's subsequent regulatory enactments.

> The rights of a natural person are always subject to police regulation by the government, whenever, in the judgment of its legislative branch, the public interests require such action. There is no reason in law or justice why incorporated companies should not be subjected to the same rule.

*Davis v. Vernon Shell Rd. Co.*, 103 Ga. 491, 492 (1) (29 SE 475) (1898). Pursuant to OCGA § 50-8-35 (f) (3), CADDAI has been made subject to DCA's authority to conduct a performance audit.

2. Both CADDAI and CGRDC urge that the trial court erred in broadly construing the extent to which their books and records are accessible to DCA. Although the trial court did hold that certain of CADDAI's loan files which predated the 1992 effective date of OCGA § 50-8-35 (f) (3) were not subject to audit by DCA, CADDAI nevertheless contends that none of its books and records which predate the 1992 effective date of that statute are accessible to DCA. Likewise, CGRDC contends that none of its books and records which predate the 1989 effective date of OCGA § 50-8-39 are accessible to DCA.

OCGA §§ 50-8-35 (f) (3) and 50-8-39 authorize DCA to conduct a "performance audit." However, neither statute designates the scope of those materials which are to be provided to DCA in connection with such an audit. Accordingly, a determination of the extent to which CADDAI's and CGRDC's books and records are to be made available to DCA is ultimately dependent upon the meaning of "per-

formance audit."

The evidence demonstrates that "performance audit" is a term of art in the field of accounting. The rules of statutory construction specify that

> words of art or words connected with a particular trade or subject matter . . . shall have the signification attached to them by experts in such trade or with reference to such subject matter.

OCGA § 1-3-1 (b). The expert testimony in the instant case shows that a "performance audit" is historical in nature and, as such, requires access to materials which relate to prior transactions. It would follow that, although DCA did not have any authority to conduct a "performance audit" of CADDAI prior to 1992 or of CGRDC prior to 1989, DCA's current statutory mandate to conduct such audits necessarily includes authorized access to CADDAI's and CGRDC's pre-enactment books and records.

CADDAI and CGRDC urge, however, that construing DCA's authority under OCGA §§ 50-8-35 (f) (3) and 50-8-39 this broadly gives those statutes retroactive operation. It is true that neither statute expressly provides for retroactive operation and that " '[t]he settled rule for the construction of statutes is not to give them a retrospective operation, unless the language so imperatively requires.' [Cit.]" *Bank of Norman Park v. Colquitt County*, 169 Ga. 534, 536 (150 SE 841) (1929). However, construing the statutes as mandating DCA's access to pre-enactment books and records is not violative of this "settled rule" of statutory construction. Under this construction, OCGA §§ 50-8-35 (f) (3) and 50-8-39 operate prospectively only, insofar as DCA's authority to conduct a "performance audit" is concerned. A construction of the legislative grant of that prospective authority as necessarily mandating DCA's access to such past facts as are memorialized in pre-enactment books and records does not give those statutes retroactive operation. "A statute does not operate retrospectively because it relates to antecedent facts. . . ." *Ross v. Lettice*, 134 Ga. 866, 868 (68 SE 734) (1910).

CADDAI and CGRDC further urge that construing DCA's authority under OCGA §§ 50-8-35 (f) (3) and 50-8-39 so broadly as to authorize access to pre-enactment books and records would be violative of the constitutional proscription against passage of retroactive laws.

> "Upon principle every statute which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new liability in

respect to transactions or considerations already past, must be deemed retrospective."

*Ross v. Lettice,* supra at 868. However, neither OCGA § 50-8-35 (f) (3) nor OCGA § 50-8-39 impose any new obligation, duty or liability upon CADDAI or CGRDC with respect to their pre-enactment transactions. Those statutes merely impose a new obligation and duty upon DCA to conduct a performance audit of CADDAI and CGRDC. Thus, it is merely CADDAI's and CGRDC's books and records relating to their pre-enactment transactions, not the underlying pre-enactment transactions themselves, which are potentially affected by the statutes. Prior to enactment of OCGA §§ 50-8-35 (f) (3) and 50-8-39, there was admittedly a lack of statutory authority upon which DCA could premise its right of access to those books and records. However, that authority could be conferred upon DCA at any time by the legislature. CADDAI and CGRDC had no vested right in DCA's pre-enactment lack of authority and, consequently, that former lack of authority cannot now serve as a basis for denying DCA post-enactment access to such of CADDAI's and CRGDC's books and records as have become relevant to the conduction of a performance audit.

> An individual can have no vested right in a current state of the law which is subject to change, either by the legislature or the courts, without some act in reliance upon that law. [Cits.]

*Eig v. Savage,* 177 Ga. App. 514, 516 (339 SE2d 752) (1986).
Accordingly, a construction of DCA's statutory authority to conduct a "performance audit" as necessarily including its authorized access to CADDAI's and CGRDC's pre-enactment books and records does not give OCGA §§ 50-8-35 (f) (3) and 50-8-39 unwarranted retroactive operation and is not otherwise violative of the constitutional proscription against passage of retroactive laws. Since the expert testimony shows that this is the construction given to the term "performance audit" in the field of accounting, it is the proper construction to be given to that term as it was employed by the legislature in OCGA §§ 50-8-35 (f) (3) and 50-8-39.

### Case No. S94X0140

3. The Commissioner enumerates as error the trial court's ruling that DCA has no authorized access to CADDAI's loan files of "those borrowers [who] had [no] active files . . . as of [the effective date of OCGA § 50-8-35 (f)]."
As we have previously held, the 1992 legislative grant to DCA of authority to conduct a "performance audit" of CADDAI necessarily

includes DCA's authorized access to CADDAI's pre-enactment books and records. There is nothing in the language of OCGA § 50-8-35 (f) (3) or in the expert testimony regarding the meaning of the term "performance audit" which would authorize a finding that any of CADDAI's pre-enactment books and records, of whatever form or nature, is to be withheld from DCA. It follows that the trial court erred in its ruling that DCA has no authorized access to certain of CADDAI's pre-enactment loan files. If the scope of DCA's authorized access to CADDAI's pre-enactment books and records is to be limited in any way, it is incumbent upon the legislature to amend OCGA § 50-8-35 (f) (3) so as to redefine "performance audit" as having a meaning which is not otherwise co-extensive with that which is employed in the field of accounting.

*Judgment affirmed in Case No. S94A0138. Judgment reversed in Case No. S94X0140. All the Justices concur.*

DECIDED FEBRUARY 21, 1994.

*Lee & MacMillan, Thomas J. Lee, King & Spalding, William S. Duffey, Jr., Michael W. Youtt*, for appellants.
*Michael J. Bowers, Attorney General, William C. Joy, Grace E. Lewis, Senior Assistant Attorneys General*, for appellee.