S96A0975. BO FANCY PRODUCTIONS, INC. et al. v. RABUN COUNTY BOARD OF COMMISSIONERS et al.

(478 SE2d 373)

CARLEY, Justice.

Mountain and Lake Adventures, Inc. (MLA) is the owner of real property located in Rabun County. Bo Fancy Productions, Inc. (Bo Fancy) is a South Carolina corporation engaged in the business of staging entertainment events. Robert Baxter is one of Bo Fancy's promoters. Bo Fancy, through Baxter, rented MLA's property for the purpose of holding "Bo's Mountain Rally." According to advertising, this rally would be a three-day event offering attendees camping, concerts, motorcycle shows and the goods and services of over 200 vendors. Three weeks before the scheduled rally, however, the Rabun County Board of Commissioners and the Rabun County Board of Health (Boards) filed suit seeking to enjoin MLA, Bo Fancy and Baxter (Appellants) from holding the event. The predicates for seeking injunctive relief were Appellants' alleged non-compliance with certain provisions of the Rabun County zoning ordinance, as well as their alleged non-compliance with the Mass Gatherings Act (Act), OCGA § 31-27-1 et seq. Appellants' answer asserted their compliance with the zoning provisions and the alternative inapplicability or

unconstitutionality of the Act. A hearing was held and the trial court found that the rally would violate the zoning provisions and that the Act was both applicable and constitutional. Accordingly, an injunction was issued. Nevertheless, the rally took place and a motion to hold Appellants in contempt was filed. After a hearing, the trial court found that Appellants were in contempt of the injunction and they appeal.

1. According to the original plans, the rally was to be held on two parcels of property, one zoned "agricultural" and the other zoned "residential." At the hearing on the injunction, Appellants represented to the trial court that the commercial aspects of the rally would be confined to the "agricultural" property, whereas the "residential" property would be used as a free parking lot for the vehicles of attendees. The trial court ruled that, although the zoning ordinance did permit camping on "agricultural" property, it did not permit "clearly commercial endeavors," such as "a musical concert charging admission and a vendor area where [various goods and services] are sold," to be held thereon. The trial court also ruled that use of the "residential" property as a parking lot for the vehicles of attendees would violate the zoning ordinance because such a use "would be for a commercial purpose. . . . Parking will be absolutely necessary to facilitate the anticipated commercial endeavors on the adjoining ['agricultural'] property." Appellants urge that the trial court erred in so construing the zoning ordinance.

(a) Zoning ordinances are to be strictly construed in favor of the property owner. *Harrison v. City of Clayton*, 261 Ga. 513 (407 SE2d 731) (1991). The Rabun County zoning ordinance specifically provides that those uses authorized for property zoned "residential" shall not be employed for "commercial purposes," but does not specifically prohibit those uses authorized for property zoned "agricultural" from being so employed. Had the intent been to prohibit the employment for "commercial purposes" of the uses authorized for property zoned "agricultural," as well as for property zoned "residential," the ordinance presumably would have so provided.

> "(W)here a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." [Cit.]

*Coastal Ga. Regional Dev. Ctr. v. Higdon*, 263 Ga. 827, 829 (1) (439 SE2d 902) (1994). Because the ordinance did not provide that the uses authorized for property zoned "agricultural" could not be employed for "commercial" purposes, the commercial aspect of the

rally would not preclude its being held on property zoned "agricultural."

> "Since statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit terms. [Cits.]" [Cits.]

*Fayette County v. Seagraves*, 245 Ga. 196, 197-198 (1) (264 SE2d 13) (1980). It follows that the trial court erred in concluding that the rally could not be held on "agricultural" property simply because it was a "commercial" endeavor.

Notwithstanding its commercial aspect, the rally could be held on "agricultural" property if the event otherwise was an authorized use to which "agricultural" property could be put under the ordinance. The ordinance authorizes "agricultural" property to be used for "[p]ublic and semi-public . . . land uses[,] . . . recreation facilities and grounds." Any ambiguities in the language employed in zoning statutes should be resolved in favor of the free use of property. *City of Cordele v. Hill*, 250 Ga. 628 (300 SE2d 161) (1983). Resolving all ambiguities in favor of Appellants, the rally, despite its commercial aspect, would constitute a use of the "agricultural" property which would provide recreational opportunities to any member of the public choosing to attend. It follows that holding the rally on property zoned "agricultural" would not violate the ordinance and the trial court erred in ruling otherwise.

(b) Even though they are to be strictly construed in favor of the property owner and any ambiguous language therein is to be resolved in favor of the free use of property, zoning ordinances nevertheless must be given a reasonable construction. *Bd. of Commrs. of Henry County v. Welch*, 253 Ga. 682, 683 (1) (324 SE2d 178) (1985). Here, the Rabun County zoning ordinance unambiguously prohibits any authorized use for "residential" property from being employed for a "commercial" purpose. Under the ordinance, parking is not itself a specifically authorized use for "residential" property and only such non-commercial parking as would be incidental to an authorized "residential" use would be permitted. Thus, parking incidental to such non-commercial authorized "residential" uses as churches, parks and country clubs would be permissible on "residential" property. However, operating a parking lot incidental to a commercial endeavor on adjoining "agricultural" property would not be authorized. Such "cross-district" parking would violate the unambiguous prohibition upon "residential" property being put to a "commercial" use. See *DeKalb County v. Publix Super Markets*, 264 Ga. 739, 742 (3)

(452 SE2d 471) (1994); *Guhl v. Par-3 Golf Club*, 238 Ga. 43, 45 (2) (231 SE2d 55) (1976). It follows that operating on "residential" property a parking lot for the vehicles of those attending the commercial rally on the adjoining "agricultural" property would violate the ordinance and the trial court was correct in so holding.

2. The Act requires that, as a prerequisite to promoting or holding a mass gathering, an application for a permit be submitted to the Department of Human Resources (DHR) at least 45 days before the first day of the gathering, but the Act provides no time limit within which DHR must act upon the permit application. OCGA § 31-27-3. Appellants urge that the Act thereby delegates overly broad discretion to DHR and is, therefore, an unconstitutional "prior restraint" on the exercise of First Amendment rights. *FW/PBS, Inc. v. City of Dallas*, 493 U. S. 215 (110 SC 596, 107 LE2d 603) (1990).

(a) Because Appellants did not attempt to comply with the Act by applying for a permit from DHR, the initial question to be resolved is whether they had sufficient standing to raise this constitutional issue. It has been recognized that the only prerequisite to attacking the constitutionality of a statute "is a showing that it is hurtful to the attacker. [Cits.]" *Stewart v. Davidson*, 218 Ga. 760, 764 (1) (130 SE2d 822) (1963). Appellants would not be hurt by the Act and, consequently, would lack standing to attack its constitutionality if they took "no affirmative action whatsoever to seek to comply with [it] *or to run afoul of its restrictions*. [Cits.]" (Emphasis supplied.) *Midway Youth Football Ladies Auxiliary v. Strickland*, 449 FSupp. 418, 422 (N.D. Ga. 1978). However, Appellants did take affirmative action to "run afoul" of the Act by promoting the rally without first making an application to DHR for a permit. Under these circumstances, the constitutionality of the Act was not of mere academic interest to Appellants, but actually was hurtful to them because the Boards' attempted enforcement thereof placed Appellants in imminent danger of losing their investment in the rally. See *Frances Wood Wilson Foundation v. Bell*, 223 Ga. 588, 589 (1) (157 SE2d 287) (1967).

Moreover, the Supreme Court of the United States has recognized that a more relaxed standard of "standing" applies where, as here, the constitutionality of a statute is attacked on First Amendment grounds. See *Foster v. State*, 250 Ga. 269, 270 (297 SE2d 262) (1982).

> In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. "One who might have had a license

for the asking may . . . call into question the whole scheme of licensing when he is prosecuted for failure to procure it." [Cits.] Standing is recognized in such cases because of the ". . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." [Cits.]

*Freedman v. Maryland,* 380 U. S. 51, 56 (I) (85 SC 734, 13 LE2d 649) (1965). Accordingly, even assuming that Appellants might not otherwise meet the traditional standard of "standing," they clearly have met the more relaxed standard of "standing" applicable to a First Amendment challenge of an allegedly over-broad statute.

(b) Restrictions on the exercise of free speech must be content neutral, narrowly tailored to serve significant governmental interests and provide for alternative channels of communication. *Hirsh v. City of Atlanta,* 261 Ga. 22, 25 (2) (401 SE2d 530) (1991). The Act does not, by its terms, prohibit the holding of mass gatherings. To the contrary, it merely imposes certain limitations upon the holding of such gatherings. Nevertheless, the Act requires that a permit be obtained from DHR as a "prior restraint" upon the holding of a mass gathering and does not specify when, or even if, DHR must act upon an application for a permit. The Supreme Court of the United States has held that

> a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. [Cits.] . . . [A] licensing scheme failing to provide for definite limitations on the time within which the licensor must issue the license [is] constitutionally unsound, because the "delay compel[s] the speaker's silence." [Cit.] . . . Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.

*FW/PBS, Inc. v. City of Dallas,* supra at 226-227 (II) (B). Even assuming that the state's interest justifies the statutory requirement that a license be obtained prior to the promoting and holding of a mass gathering,

> such a regulation must provide that the licensor "will, within a specified brief period, either issue a license or go to court." [Cit.] That requirement is not met here, for the . . . Act . . . permits a delay without limit. The statute on its face does not purport to require when a determination must

be made, nor is there an administrative regulation or interpretation doing so.

*Riley v. Nat. Fed. of the Blind*, 487 U. S. 781, 802 (IV) (108 SC 2667, 101 LE2d 669) (1988). It follows that the trial court erred in upholding the constitutionality of the Act as against Appellants' challenge.

3. For the reasons discussed in Divisions 1 (a) and 2 (b), the trial court erred in granting injunctive relief against Appellants based upon their proposal to hold the rally on "agricultural" property and their failure to comply with the Act. For the reasons discussed in Division 1 (b), the trial court correctly enjoined Appellants from operating a parking lot on the "residential" property, since zoning ordinances may be enforced by injunctions. See *Graham v. Phinizy*, 204 Ga. 638, 644 (2) (51 SE2d 451) (1949). There being no dispute that Appellants violated the injunction in all regards, the trial court correctly adjudged them to be in contempt for their violations. See *Christian Knights of the Ku Klux Klan v. Richmond County*, 258 Ga. 538 (2) (371 SE2d 868) (1988). "[T]he disobedience of an unsuperseded order within the jurisdiction of a court is a contempt of court, even though the order is erroneous. [Cit.]" *Carter v. Carter*, 244 Ga. 670, 672 (3), fn. 2 (261 SE2d 619) (1979).

In the remaining enumerations of error, Appellants assert that the Act is unconstitutional on equal protection grounds, challenge the trial court's finding that the rally was a "mass gathering" as defined by the Act, urge that injunctive relief was inappropriate because "irreparable harm" was not shown, and contend that a finding of contempt was not authorized due to the impossibility of compliance with the grant of injunctive relief. These enumerations have been considered and, to the extent that they are not moot, they are found to be without merit. Accordingly, the judgment of the trial court granting injunctive relief is affirmed in part and reversed in part and the judgment of the trial court finding Appellants to be in contempt is affirmed.

*Judgments affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 25, 1996.

*Hillard J. Quint,* for appellants.
*C. Lloyd Clay, W. Brek Barker,* for appellees.