S07A1885. GRANITE STATE OUTDOOR ADVERTISING, INC.
v. CITY OF ROSWELL.
(658 SE2d 587)

BENHAM, Justice.

Granite State Outdoor Advertising, Inc. ("Granite State") is in the business of buying and leasing land for the purpose of erecting signs and billboards displaying both commercial and noncommercial messages. In May and June of 2003, Granite State submitted three

---

applications to the City of Roswell ("City") to construct billboard signs, each 672 square feet in area and 70 feet in height, at different locations within the City. The City rejected each application because the sign ordinance in place at the time limited off-premises signs to a maximum area of 128 square feet and 12 feet in height and because the applications were incomplete. On July 16, 2003, the City enacted a moratorium on the issuance of sign permits effective until September 15, 2003. The purpose of the moratorium was to allow the City time to draft and implement an amended sign ordinance. Granite State alleges it attempted to submit applications for similarly-sized signs during the moratorium and the City did not accept any of its sign applications for processing.

After its applications were rejected by the City, Granite State brought suit, contending that the City's entire sign ordinance, as it existed in April 2003, was unconstitutional. The trial court denied Granite State's motion for partial summary judgment and granted the City's cross-motion for summary judgment. Granite State now alleges several enumerations of error concerning its constitutional challenge to the City's April 2003 sign ordinance.

1. Granite State argues that the trial court erred when, by relying on the decisions of the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") in *Granite State Outdoor Advertising v. Clearwater*, 351 F3d 1112 (11th Cir. 2003) and in *KH Outdoor, LLC v. City of Trussville*, 458 F3d 1261 (11th Cir. 2006), it limited the extent of Granite State's standing to challenging, either as applied or facially, only those provisions of the ordinance by which Granite State was injured in fact. Under federal jurisprudence, there are three constitutional requirements for obtaining standing: (1) an injury in fact; (2) a causal connection between the injury and the causal conduct; and (3) the likelihood that the injury will be redressed with a favorable decision. *Bennett v. Spear*, 520 U. S. 154, 162 (117 SC 1154, 132 LE2d 281) (1997); *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-561 (112 SC 2130, 119 LE2d 351) (1992). In addition to the constitutional requirements for standing, there is a subset of "prudential" standing requirements that have been developed by the United States Supreme Court. *Allen v. Wright*, 468 U. S. 737, 750-751 (104 SC 3315, 82 LE2d 556) (1984). One of these prudential standing requirements is that a party is limited to asserting its own rights and not that of third parties. Id.[1] The federal courts have carved out an

---

[1] The other prudential standing requirements, not at issue in this case, call for the plaintiff's complaint (1) to fall "within the zone of interests protected by the statute or constitutional provision at issue" and (2) to exclude "abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches." *Bischoff v. Osceola County, Fla.*, 222 F3d 874, 883 (11th Cir. 2000).

exception to this particular prudential standing requirement in free speech cases, adopting what is known as the overbreadth doctrine. *Clearwater*, 351 F3d at 1116.

The overbreadth doctrine permits the assertion of third-party rights in free speech cases when a statute is applied constitutionally to the party before the court, but may be unconstitutional if applied to any third parties not before the court.[2] *Clearwater*, 351 F3d at 1116; *Broadrick v. Oklahoma*, 413 U. S. 601, 613 (93 SC 2908, 37 LE2d 830) (1973). The overbreadth doctrine is not an exception to establishing constitutional standing which unequivocally requires an injury in fact. *Virginia v. American Booksellers Assn.*, 484 U. S. 383, 392 (108 SC 636, 98 LE2d 782) (1988) (to challenge the constitutionality of a statute on overbreadth grounds the plaintiff must "establish at an irreducible minimum an injury in fact"); *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U. S. 947 (104 SC 2839, 81 LE2d 786) (1984) (facial challenges to overly broad statutes are permissible if the party asserting the challenge can show an injury in fact). Furthermore, the overbreadth doctrine does not apply to commercial speech, but may only be used as an exception to prudential standing in the context of noncommercial speech.[3] See *Bates v. State Bar of Arizona*, 433 U. S. 350 (97 SC 2691, 53 LE2d 810) (1977); *Clearwater*, 351 F3d at 1116 (overbreadth doctrine applies to cases concerning noncommercial speech).

In *Clearwater*, the Eleventh Circuit held that Granite State was required to meet the constitutional requirement of standing that it had suffered an injury in fact, before it could use the overbreadth doctrine to assert the rights of third parties. 351 F3d at 1116. More specifically, the Eleventh Circuit concluded that Granite State could only challenge the provision under which it was injured, and, per the overbreadth doctrine, as that provision would apply to third parties in the context of noncommercial speech. Id. In the instant case, Granite State argues that the Eleventh Circuit's decision in *Clearwater* and similar decisions are "aberrant" and that it is entitled to

---

[2] In *Virginia v. Hicks*, 539 U. S. 113, 119 (123 SC 2191, 156 LE2d 148) (2003), the United States Supreme Court explained its rationale for the overbreadth doctrine as follows:

We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech — especially when the overbroad statute imposes criminal sanctions. [Cits.] Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, [cit.] — harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending all enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

[3] Granite State alleges it intended to use its signs to convey both commercial and non-commercial messages.

facially attack any and all provisions of the City's ordinance that are allegedly unconstitutional. We disagree that *Clearwater* and its progeny are aberrant. See *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F3d 1257 (11th Cir. 2006) (organization lacked standing under the overbreadth doctrine to challenge provisions of an ordinance by which its activities were not affected); *Tanner Advertising Group v. Fayette County*, 451 F3d 777, 791 (11th Cir. 2006) (en banc) (plaintiff who challenged a county sign ordinance after its sign permit was denied lacked standing to challenge the ordinance's "Attention-getting devices" provision because "[t]he record is devoid of any evidence that [the plaintiff] ever intended to use 'Attention-getting devices' . . . .").

We also cannot agree with Granite State's assertions that these federal cases are inconsistent with Georgia jurisprudence. In regard to establishing standing, we have held that "the only prerequisite to attacking the constitutionality of a statute 'is a showing that it is hurtful to the attacker. (Cits).' " *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 344-345 (478 SE2d 373) (1996) (concerning constitutionality of a zoning ordinance in the context of "prior restraint"). We have not expressly adopted the federal overbreadth doctrine as an exception to standing; however, we have articulated a standard of "relaxed" standing in free speech cases, allowing broader challenges to the constitutionality of a statute in such contexts. Id.; *Fulton County v. Galberaith*, 282 Ga. 314, 316 (647 SE2d 24) (2007) (relaxed standing is used in free speech cases). See also *Feminist Women's Health Center v. Burgess*, 282 Ga. 433 (651 SE2d 36) (2007) (physicians who performed abortions could have third-party standing to challenge, on their patients' behalf, the constitutionality of the state's denial of Medicaid reimbursement payments for medically necessary abortions). However, even with this relaxed standard of standing for free speech cases, aggrieved parties must still show harm by the provisions being challenged as unconstitutional.

For example, in *Bo Fancy Productions*, two Rabun County agencies filed and obtained an injunction banning festival promoters from holding a festival based on the promoters' failure to comply with certain zoning ordinances and the Mass Gathering Act (OCGA § 31-27-1 et seq.). The promoters allowed the festival to go on in spite of the injunction and were later held in contempt. Although they never applied for and were never denied a permit or license for their festival, we nevertheless held that the promoters had standing, under the relaxed standard for free speech cases, to challenge, as an unconstitutional prior restraint, that part of the Mass Gathering Act which required anyone who was holding a mass gathering to apply for a permit. 267 Ga. at 344. We found that the promoters had standing

to attack that portion of the statute because they were held in contempt when they "r[a]n afoul" of the court's enforcement of the statute. Id. at 344-345. As such, there was an injury in fact insofar as the promoters were actually penalized for failing to procure the statutorily required permit. Our decision in *Bo Fancy* does not, as Granite State urges, permit a party denied a permit based on the noncompliance with a constitutionally permissible provision[4] to attack other provisions by which it was not injured in any manner whatsoever. See *Feminist Women's Health Center v. Burgess*, 282 Ga. at 435-436 (physicians performing abortions were entitled to third-party standing because they had a financial interest in and were injured in fact from the state's denial of Medicaid reimbursements for their patients who received medically necessary abortions).

Similarly, the appellees in *Fulton County v. Galberaith* never attempted to attack a provision by which they were not harmed in fact. Those appellees were prohibited from erecting off-premises advertising signs by a provision that banned all off-premises signs in commercial zones. We found that appellees had "as applied" standing as well as standing to facially attack the ordinance because it effectively found all off-premises signs "presumptively illegal" and, through a regulatory scheme of exceptions to the presumption, prohibited signs based on their content. 282 Ga. at 315-317.[5] Although we articulated a relaxed standard of standing in *Galberaith*, we did not apply relaxed standing in our analysis because the statute was unconstitutional "as applied" to the appellees. Id. at 316. Thus, our decision in that case cannot be extrapolated for the proposition that, in such cases, litigants may make facial attacks upon entire statutory schemes and provisions by which they were not harmed "as applied" or harmed by "running afoul" of the provision.[6] Accordingly, we conclude that the trial court made no error when it held Granite State had standing to contest only those provisions of the sign ordinance that had caused injury to Granite State.

2. Since the denial of Granite State's sign applications for failure to meet the City's height and size restrictions was correct because the restrictions were constitutional (see *Clearwater*, 351 F3d at 1117) and

---

[4] Granite State does not and cannot contend that the City's height and size provisions are unconstitutional. *Clearwater*, 351 F3d at 1116.

[5] Our review in *Galberaith* was limited to the constitutionality of the ordinance under the First Amendment of the Constitution of the United States and did not consider the constitutionality of the statute under Georgia's constitution. Id. at 315.

[6] Since we did not address the issue of standing in *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393 (467 SE2d 875) (1996), it does not constitute binding precedent on that issue. See *Allen v. State*, 219 Ga. 777, 778 (135 SE2d 885) (1964).

because Granite State lacked standing to challenge any other provision of the ordinance, the trial court should not have addressed Granite State's constitutional arguments concerning other provisions of the April 2003 ordinance.[7] Furthermore, because of Granite State's lack of standing, we do not address Granite State's enumerations of error attacking the entire ordinance on constitutional grounds.[8]

3. Granite State also argues that the City's ordinance violated the First Amendment by failing to require officials to act within a limited period of time. See *Bo Fancy*, 267 Ga. at 344-345 (ordinance that failed to set any time table for issuing license for holding mass gatherings was unconstitutional). This contention is without merit. Section 22.22 of the City's April 2003 sign ordinance provided that the City would process all sign applications within 30 business days of receipt. All applications Granite State submitted during May and June 2003 were acted upon in less than 30 business days of being submitted.[9] As such, Granite State cannot show it was injured by this provision of the ordinance and is without standing to challenge it on constitutional grounds. *Clearwater*, 351 F3d at 1116.

4. Granite State further contends the trial court erred when it failed to analyze whether the 60-day moratorium was the least restrictive means to meet the City's goal of amending the April 2003 statute. Instead of articulating a detailed analysis in its ruling, the trial court assumed the moratorium was invalid. The trial court then found that even if the moratorium was invalid and the City was compelled to process applications during the time period in question, Granite State's applications filed during that time were properly denied because they failed to comply with the size and height requirements of the April 2003 statute. Assuming, without deciding, the validity of the trial court's premise that the moratorium was invalid, there was no error in the trial court's analysis or ruling.

5. Finally, Granite State contends it is entitled to damages pursuant to 42 USC § 1983. Relief under that provision is for the purpose of compensating those who have been harmed by the deprivation of their constitutional rights. *Carey v. Piphus*, 435 U. S. 247, 254 (98 SC 1042, 55 LE2d 252) (1978); *Tanner Advertising Group,*

---

[7] In its ruling, the trial court determined that the ordinance was content-neutral and severed the portions which Granite State alleged were unconstitutional.

[8] These enumerations of error concern the content-neutrality of the ordinance, the applicability of the "least restrictive means" test, the applicability of the test enunciated in *Central Hudson Gas & Elec. Corp. v. Public Svc. Comm. of New York*, 447 U. S. 557 (100 SC 2343, 65 LE2d 341) (1980) for commercial speech, and the trial court's severance of allegedly unconstitutional provisions.

[9] Consequently, the trial court's observation that mandamus would be available to remedy any failure by the City to abide by the time table set forth in the ordinance for processing applications has no bearing on the factual circumstances of this case.

*LLC v. Fayette County*, 451 F3d at 786. Because Granite State has not been deprived of any constitutional right, it is not entitled to any damages, nominal or otherwise. *SMD, LLP v. City of Roswell*, 252 Ga. App. 438, 442 (555 SE2d 813) (2001) (party not entitled damages where it did not suffer a "total deprivation" of its constitutional rights). Accordingly, the trial court did not err when it granted summary judgment to the City.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

MELTON, Justice, concurring.

Although I concur in the judgment of the majority, I write separately to correct some confusion caused by our decision in *Fulton County v. Galberaith*, 282 Ga. 314 (647 SE2d 24) (2007). In that case, as pointed out by the majority, the appellees were allowed to raise an "as applied" and facial constitutional attack against provisions of a sign ordinance which directly harmed them. In discussing the appellee's standing to bring these claims, however, our citations to authority were imprecise. Specifically, we cited to *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393 (467 SE2d 875) (1996), and, in a parenthetical, characterized this case as "affirming a superior court's finding of unconstitutionality of various provisions of a local sign code which were not directly implicated in the underlying appeal from denial of application of variance." This description of *Union City*, because it was incorporated in our discussion of standing, gave the erroneous implication that standing to bring "as applied" and facial attacks to sign ordinances would be extended to various provisions of a sign ordinance not implicated by the harm suffered by the challenger. That simply is not the case, as shown by the majority opinion in this case, and it was not our intent to imply in *Galberaith* otherwise.

DECIDED MARCH 10, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008.

*Edward A. Webb, Matthew C. Klase, G. Franklin Lemond, Jr.*, for appellant.

*Carothers & Mitchell, Richard O. Carothers*, for appellee.