## 39812. ALDRIDGE et al. v. GEORGIA HOSPITALITY & TRAVEL ASSOCIATION.

SMITH, Justice.

County boards of health are authorized by state law to inspect food service establishments (restaurants) and tourist courts (hotels and motels) and issue permits for their operation. No person may

lawfully operate a restaurant, hotel or motel in Georgia without a health inspection permit. See OCGA §§ 26-2-371, 31-28-2 (Code Ann. §§ 88-1002, 88-1102). Appellant Aldridge is one of five members of the DeKalb County Board of Health (the Board), which is authorized to make health inspections and issue permits in DeKalb County. Appellee Georgia Hospitality & Travel Association (GHTA) is an unincorporated voluntary trade association organized to promote the business interests of the hotels, motels, restaurants and various travel-related industries which comprise its membership. An undetermined number of GHTA members do business in DeKalb County.

In October 1981 the Board adopted a schedule of fees, ranging from $50 to $100, it planned to charge for the inspection of hotels, motels and restaurants in DeKalb County. State law is silent as to the imposition of fees for the inspection of hotels, motels and restaurants. Id. In June 1982 GHTA filed this lawsuit, seeking a declaration that the fees were unlawful, an injunction prohibiting the collection of further fees, and return of any fees already paid to the Board by its DeKalb County members. The Board moved to dismiss, contending that (1) GHTA lacked standing to sue on behalf of its DeKalb County members; (2) the superior court lacked jurisdiction because GHTA failed to exhaust its administrative remedies prior to filing suit; and (3) GHTA failed to state a claim for relief in that OCGA § 31-3-4 (Code Ann. § 88-204) expressly authorized imposition of the inspection fees.

The trial court rejected each of the Board's contentions, denied the motion to dismiss, and certified the case for immediate review by this court. We granted the Board's application for appeal and now affirm.

1. First we address the issue of GHTA's standing to sue as a representative of its member hotel, motel, and restaurant establishments which are subject to the DeKalb County inspection fees. The parties to this appeal have cited no Georgia cases, and we are aware of none, which squarely address the question of "associational standing" as asserted by GHTA in this case.[1] There is, however, ample federal precedent and legal commentary on this issue. See, e.g., Hunt v. Wash. State Apple Advertising Comm., 432 U. S. 333, 341 (97 SC 2434, 53 LE2d 383) (1977); Warth v. Seldin, 422 U. S. 490, 511 (95 SC 2197, 45 LE2d 343) (1975); Ga. Hospital Assn. v. Dept. of Medical Assistance, 528 FSupp. 1348, 1352 (N. D. Ga. 1982); Comment, 56 Notre Dame Law. 546 (1981); Comment, Associational

---

[1] Two cases recently decided by this court, *Lindsey Creek Area Civic Assn. v. Consolidated Govt.,* 249 Ga. 488 (292 SE2d 61) (1982), and *Equitable Life Assurance*

Third-Party Standing and Federal Jurisdiction Under *Hunt,* 64 Iowa L. Rev. 121 (1978). We adopt the three-part test for standing of associations set out in Hunt v. Wash. State Apple Advertising Comm., supra: "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U. S. at 343.

GHTA meets this test. Each member hotel, motel or restaurant operating in DeKalb County suffers direct economic injury by the assessment of county inspection fees, and would have standing to bring an individual lawsuit challenging the fee system. This action is germane to the stated purposes of GHTA, which include monitoring of industry-related legislation, education of its members, and promotion of the hospitality and travel industry in general. Finally, this suit is primarily seeking declaratory and injunctive relief and does not present complicated issues of individual damages. Thus the relief requested does not require the participation of individual GHTA members. Cf. *Equitable Life Assurance Society v. Tinsley Mill Village,* 249 Ga. 769 (294 SE2d 495) (1982).

We note three policy reasons, apart from the concerns embodied in the Hunt test, which favor associational standing in this case. First, the record clearly demonstrates that GHTA is a zealous advocate of its members' interests, and has provided adequate representation in this suit. Second, allowing associations to represent their members' interests in appropriate cases promotes judicial economy. One litigant can, in a single lawsuit, adequately represent many members with similar interests, thus avoiding repetitive and costly separate actions. This is particularly true where, as in this case, the contested administrative action involves fees so small that separate court challenges by aggrieved members may not be economically feasible. A third policy favoring standing for GHTA in this case was noted by the

---

*Society v. Tinsley Mill Village,* 249 Ga. 769 (294 SE2d 495) (1982), discussed the issue of standing of associations seeking to assert members' rights. Neither case is controlling here.

*Lindsey Creek* was a zoning case which did not directly address the question of standing of a trade association like GHTA. In the *Tinsley Mill* case, this court held that an unincorporated association of condominium owners was not a real party in interest to a lawsuit brought to enjoin flooding of a condominium complex and to recover damages for flooding of individual members' land. The decision in that case rested on real party in interest considerations, not standing. See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1542 (1971) (Comparing the concepts of standing, capacity, and real party in interest). Neither party to this appeal has raised the real party in interest issue, and we do not address it.

trial court. Associations are generally less susceptible than individuals to retaliation by those officials responsible for executing the challenged policies.

We therefore affirm the trial court's finding that GHTA possessed standing to assert its members' rights in this action.

2. The second issue is whether any administrative remedies were available to GHTA, and, if so, whether GHTA was required to exhaust them before bringing this action in superior court.

The trial judge found that the Administrative Procedure Act, OCGA § 50-13-1 et seq. (Code Ann. § 3A-101 et seq.), does not apply to county boards of health, and we agree. County boards of health are not included within the OCGA § 50-13-2 (Code Ann. § 3A-102) definition of "agency," and the Court of Appeals has held that the health boards are not instrumentalities of the Department of Human Resources, *Ga. Dept. of Human Resources v. Demory,* 138 Ga. App. 888 (227 SE2d 788) (1976). Since the Board is not a state agency, APA appeal procedures simply do not apply to policies implemented by it.

Nor does the state statute governing county boards of health provide GHTA or its members with an avenue of administrative appeal from the Board's assessment of inspection fees. OCGA § 31-5-3 (a) (1) (Code Ann. § 88-305) provides: "Any person *who is a party to a proceeding* and who is aggrieved or adversely affected by any final order or action of a county board of health or agency may have review thereof by appeal to the department. . ." (Emphasis supplied.) This code section is inapplicable here because there was no "proceeding" or hearing conducted by the Board to which GHTA could have been a party. The Board further argues that the appeal procedures applicable to county boards of health, OCGA § 37-1-40 (Code Ann. § 88-307), should have been exhausted by GHTA prior to filing suit. We disagree. Although OCGA § 37-1-40 (Code Ann. § 88-307) requires that county boards of health conduct a hearing before adopting rules and regulations, it appears from the record that no such hearing was held in this case. Therefore OCGA § 37-1-40 (Code Ann. § 88-307) has no application to this dispute. Because there were no administrative appeal procedures available to GHTA, the doctrine of exhaustion of administrative remedies urged by the Board is inapposite. Cf. *Cobb County Health Dept. v. Henson,* 226 Ga. 801 (177 SE2d 710) (1970). The trial court's ruling on this point was correct.

3. We turn now to the merits of this appeal. The Board contends that its motion to dismiss for failure to state a claim should have been granted. The Board's position is that its fee schedule was clearly authorized by OCGA § 31-3-4 (Code Ann. § 88-204), which empowers county boards of health to "make contracts and establish fees for the

provision of mental and other public health services. No person shall be denied services on the basis of his inability to pay." The Board maintains that health inspections of hotels, motels and restaurants constitute the provision of "other public health services" under the statute. Therefore, it contends, OCGA § 31-3-4 (Code Ann. § 88-204) expressly authorizes the imposition of the fees in dispute. The court below held that the statute, when read in the context of its legislative history, does not authorize the fees sought to be assessed by the Board. We agree.

The predecessor of present OCGA § 31-3-4 (Code Ann. § 88-204) was enacted in 1964, modified in 1966, and revised to its present form in 1976. A review of these acts shows that the statute was not intended as a broad authorization to county health boards to charge for their services. Rather it was meant to authorize the assessment of fees for limited, specified categories of personal health care services provided by county boards of health. The original act authorized county health boards to "accept fees for the purpose of providing home nursing services for the chronically ill . . ." Ga. Laws 1964, pp. 499, 514. The 1966 amendment expanded the boards' power to allow assessment of fees for "mental health diagnostic and treatment services and . . . home health care services . . . for the chronically ill and aged . . ." Ga. Laws 1966, p. 380. In 1976 the legislature struck entirely the language of subsection (f) of the prior statute and substituted in its place the present OCGA § 31-3-4 (6) (Code Ann. § 88-204), with its "mental and other public health services" language. Ga. Laws 1976, pp. 1420-21. Given this history, we conclude that the legislature, by its use of the language "other public health services" in the 1976 revision, intended to authorize fee collection only for those personal health care services, such as nursing homes services and mental health care, which are provided by county health boards to individual citizens. Assessment of fees for inspection of public hotels, motels and restaurants is simply not within the contemplation of the act.[2] "[I]n construing the meaning of an ambiguous Code section the original act will be looked to in order to determine the true interpretation of the section . . .; and it is the well-settled rule that . . . unless the contrary manifestly appears from the words employed, the language of such section should be construed as intending to state the previously existing law, and not to change it." *State v. Camp,* 189 Ga. 209, 210 (6 SE2d 299) (1940).

---

[2] In addition, four local boards of health have been created by constitutional amendment or local legislation. See Op. Att'y Gen. 67-276, pp. 385-386. One of these acts creates a joint Macon-Bibb County Board of Health, and expressly empowers

This is not to say that the legislature could never validly delegate to county boards of health authority to charge for health inspections of hotels, motels, and restaurants. We merely hold that no clear authority to assess such fees can be found in OCGA § 31-3-4 (6) (Code Ann. § 88-204). The trial court correctly denied the Board's motion to dismiss on this ground.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 7, 1983.

*George P. Dillard, Gail C. Flake,* for appellants.
*Branch & Swann, John D. Marshall,* for appellee.

the City of Macon and Bibb County to exact inspection fees, 1953 Ga. Laws, Nov-Dec. Sess. 256, 260-261. This express authorization is not given to OCGA Ch. 31-3 (Code Ann. § 88-201 et seq.) boards and the other three specially created boards of health. This omission implies that the legislature did not intend to grant broad power to exact inspection fees to Ch. 31-3 (Code Ann. § 88-201 et seq.) county boards of health.