S07A1039. FEMINIST WOMEN'S HEALTH CENTER et al.
v. BURGESS et al.
(651 SE2d 36)

THOMPSON, Justice.

Appellants appeal from the trial court's order dismissing their complaint challenging the constitutionality of that portion of Georgia's Medicaid program which denies Medicaid coverage for medically necessary abortions. For the reasons that follow, we reverse.

The challenged regulations are part of Georgia's Medicaid program under which the State provides medical services to persons who meet certain financial eligibility requirements. See 42 USCA § 1396 et seq.; OCGA § 49-4-140 et seq. The program, set out in the Department of Community Health's Policies and Procedures, provides payment for covered services when such services are medically necessary. See, e.g., Div. of Med. Assistance, Ga. Dept. of Community Health, *Policies and Procedures for Medicaid/Peachcare for Kids*, Definition 15 and § 105 (k) (July 1, 2004). With respect to abortion services in particular, the program provides that the State will reimburse for abortions performed on Medicaid-eligible patients only "if the life of the mother would be endangered if the fetus were carried to term or if the mother was a victim of rape or incest." Div. of Med. Assistance, Ga. Dept. of Community Health, *Policies and Procedures for Physician Services*, § 904.2 (July 1, 2004); Div. of Med. Assistance, Ga. Dept. of Community Health, *Policies and Procedures for Hospital Services*, § 911.1 (July 1, 2004); Div. of Med. Assistance, Ga. Dept. of Community Health, *Policies and Procedures for Family Planning Clinic Services*, § 903 (July 1, 2004). In contrast, Medicaid-eligible women who carry their pregnancies to term are provided coverage for all medically necessary services.

Appellants are a physician and several health care facilities who have performed medically necessary abortions on low-income women in the past and have been refused payment under Georgia's Medicaid plan and Leslie Roe, a Medicaid-eligible woman suffering from spina bifida and paralysis who lacked the funds for a medically necessary abortion. Appellees are the Commissioner of the Department of Community Health, members of the board of the department, and the director of the Department's Division of Medical Assistance. In their complaint for declaratory and injunctive relief, appellants alleged that the program's exclusion of medically necessary abortions violated the Georgia Constitution on privacy and equal protection grounds. The trial court dismissed the complaint in its entirety, holding that the medical provider appellants lacked third-party

standing to assert a claim on behalf of their Medicaid-eligible patients and that Roe's individually asserted claim was barred because she failed to exhaust her administrative remedies. This appeal followed.

1. As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights. *Ambles v. State*, 259 Ga. 406 (383 SE2d 555) (1989); *Lambeth v. State*, 257 Ga. 15 (354 SE2d 144) (1987). Recognizing limited exceptions to the general rule, this Court has acknowledged the right of an association to bring suit on behalf of its members, *Aldridge v. Ga. Hospitality &c. Assn.*, 251 Ga. 234 (304 SE2d 708) (1983), the right of the State to challenge the constitutionality of a statute which adversely impacted its ability to present evidence in a criminal prosecution, *Agan v. State*, 272 Ga. 540 (533 SE2d 60) (2000), and the right of a convicted felon, whose relationship with a regulated lending institution could have served as the basis for the institution's loss of license, to challenge a statute prohibiting felons from working in the lending industry. *Ambles v. State*, supra, 259 Ga. at 408. This Court, however, has not squarely addressed third-party standing or the precise issue in this case, whether medical providers have third-party standing to assert the rights of their Medicaid-eligible patients.

In the absence of our own authority, we frequently have looked to United States Supreme Court precedent concerning Article III standing to resolve issues of standing to bring a claim in Georgia's courts. See, e.g., *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 344 (478 SE2d 373) (1996) (applying United States Supreme Court's relaxed standard of standing where statute attacked on First Amendment grounds); *Lambeth v. State*, supra, 257 Ga. at 16, quoting *County Court of Ulster v. Allen*, 442 U. S. 140, 154-155 (99 SC 2213, 60 LE2d 777) (1979) ("a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on [the party's] own rights"); *Aldridge*, supra, 251 Ga. at 235 (1) (adopting three-part test for associational standing set forth in *Hunt v. Washington State Apple Advertising Commn.*, 432 U. S. 333, 341 (97 SC 2434, 53 LE2d 383) (1977)). It is well established under federal law that although constitutional rights must generally be asserted by the person to whom they belong, *Barrows v. Jackson*, 346 U. S. 249 (73 SC 1031, 97 LE 1586) (1953), a litigant may assert the rights of a third party in exceptional circumstances. See *Griswold v. Connecticut*, 381 U. S. 479 (85 SC 1678, 14 LE2d 510) (1965) (physician could assert privacy rights of married patients); *Barrows*, supra, 346 U. S. at 259 (property owner subject to racial covenant had standing to challenge covenant on discrimination grounds). To successfully establish third-party standing, a federal litigant must have suffered an "injury in

fact," thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U. S. 400, 411 (111 SC 1364, 113 LE2d 411) (1991). See also *Craig v. Boren*, 429 U. S. 190, 192-197 (97 SC 451, 50 LE2d 397) (1976).

Applying these criteria, the Supreme Court concluded in *Singleton v. Wulff*, 428 U. S. 106, 109 (96 SC 2868, 49 LE2d 826) (1976), that physicians had standing to challenge a Missouri statute which, like the challenged Georgia regulations, excluded abortions that were not "medically indicated" from the purposes for which Medicaid benefits were available. The Court found that because a patient's constitutionally protected abortion decision is one in which the physician is intimately involved, "the physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, that decision." Id. at 117. Subsequent to its decision in *Singleton*, the Supreme Court on numerous occasions has allowed medical providers to raise the rights of their patients. See, e.g., *Gonzales v. Carhart*, ___ U. S. ___ (127 SC 1610, 167 LE2d 480) (2007); *Ayotte v. Planned Parenthood*, 546 U. S. 320 (126 SC 961, 163 LE2d 812) (2006); *Dalton v. Little Rock Family Planning Svcs.*, 516 U. S. 474 (116 SC 1063, 134 LE2d 115) (1996); *Planned Parenthood v. Casey*, 505 U. S. 833 (112 SC 2791, 120 LE2d 674) (1992). Virtually every state court considering the issue has similarly held that abortion providers have standing to raise the constitutional rights of their patients, many in cases indistinguishable from the instant case. See, e.g., *Humphreys v. Clinic for Women*, 796 NE2d 247 (Ind. 2003); *Bell v. Low Income Women of Texas*, 95 SW3d 253 (Tex. 2002); *Simat Corp. v. Arizona Health Care Cost Containment System*, 56 P3d 28 (Ariz. 2002); *Alaska Dept. of Health &c. v. Planned Parenthood of Alaska*, 28 P3d 904 (Alaska 2001); *New Mexico Right to Choose/NARAL v. Johnson*, 975 P2d 841, 846-847 (N.M. 1998); *Pro-Choice Mississippi v. Fordice*, 716 S2d 645, 662-665 (1998); *Women's Health Center v. Panepinto*, 446 SE2d 658 (W. Va. 1993).

We agree that under limited circumstances a litigant should be accorded standing to assert the rights of third parties and hereby adopt the third-party standing test set out in *Powers*. Applying the test to this case, we find the medical provider appellants have standing to challenge on behalf of their patients the State's denial of Medicaid reimbursement for medically necessary abortions. These appellants properly asserted injury in fact insofar as they have a direct financial interest in obtaining State funding to reimburse them for the cost of abortion services provided to Medicaid-eligible women and have alleged that they performed and will continue to perform medically necessary abortions for which they will not be reimbursed

under Georgia's Medicaid program.[1] See 428 U. S. at 112-113. In addition, we find that the relationship between the medical provider appellants and their patients makes them uniquely qualified to litigate the constitutionality of the State's action interfering with a woman's decision to terminate a pregnancy and that privacy concerns and mootness issues significantly hinder a woman's assertion of her own right to obtain a medically necessary abortion. See id. at 117-118. Accordingly, it was error to dismiss the claims filed by the medical provider appellants.

2. The trial court also dismissed Roe's similar claims, finding they were not ripe for review because she failed to exhaust her administrative remedies. See *USA Payday Cash Advance Centers v. Oxendine*, 262 Ga. App. 632, 634-635 (585 SE2d 924) (2003). There is, however, no adequate administrative remedy. The department has no established procedure by which Roe could assert a constitutional challenge to the State's exclusion of medically necessary abortions from Medicaid coverage inasmuch as the controlling legislation and regulations provide for hearings only from the denial of a claim for services covered under the plan, not for challenges to the constitutionality of the plan itself. See OCGA § 49-4-153 (b) (1); Ga. Comp. R. & Regs. r. 350-4-.02 (1) (a).

In addition, the department conceded it has no authority under state statutory or constitutional law to provide reimbursement for medically necessary but non-life-threatening abortions not the result of rape or incest and that OCGA § 49-4-157 required the board to deny any claim seeking reimbursement for such abortions. See OCGA § 49-4-157 (Department of Community Health to "administer the state plan in a manner so as to receive the maximum amount of federal financial participation available in expenditures made under the state plan"). Appellees may not avoid judicial review for want of exhaustion of administrative remedies where the very rules of the department preclude both hearing and the remedy sought.[2] See

---

[1] In rejecting the medical providers' claim of third-party standing, the trial court erroneously concluded that "third-party standing for constitutional challenges [exists] only when the statute infringes upon the constitutional rights of that third party." Our decisions make clear that a challenged statute need not affect a constitutionally-protected right in order to give the statute's attacker standing to question the statute's constitutionality. See *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, supra, 267 Ga. at 344; *Agan*, supra, 272 Ga. at 542 (1), n.1; *Ambles*, supra, 259 Ga. at 408. "[T]he only prerequisite to attacking the constitutionality of a statute 'is a showing that it is hurtful to the attacker. (Cits.)' [Cit.]" *Bo Fancy Productions*, supra, 267 Ga. at 344.

[2] Appellees also acknowledged that the plan requires a physician's certification that abortion services are necessary to save the life of the mother in order for the department to even consider a claim for reimbursement for abortion services. While Roe's medical providers certified that her abortion was "medically necessary," it is undisputed that no physician has certified that such procedure was required to save her life.

*Wilson v. Ledbetter*, 260 Ga. 180, 182 (390 SE2d 846) (1990) (exhaustion not required where agency rules precluded hearing and adequate remedy); *Moss v. Central State Hosp.*, 255 Ga. 403, 404 (339 SE2d 226) (1986) (exhaustion required only where administrative remedy is effective and available); *Aldridge*, supra, 251 Ga. at 237 (2) (exhaustion not required where no administrative procedure for appeal available). See also *Powell v. City of Snellville*, 266 Ga. 315, 316 (467 SE2d 540) (1996) ("even when there is a remedy provided by law, a court in equity will not require pursuit of the remedy if to do so would be a futile act").

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Gerald R. Weber, Jr., Margaret F. Garrett, Louise Melling, Jennifer Dalven*, for appellants.

*Thurbert E. Baker, Attorney General, Michelle Townes, Assistant Attorney General*, for appellees.