**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0474. SAMPSON v. GEORGIA DEPARTMENT OF
JUVENILE JUSTICE.

DILLARD, Judge.

Thomas G. Sampson II ("Sampson") appeals the trial court's grant of the
Georgia Department of Juvenile Justice's ("DJJ") motion to dismiss his complaint
alleging violations of the Georgia Open Records Act.[1] Sampson contends that the trial
court erred in (1) finding that *res judicata* barred his complaint, (2) finding that the
complaint should be dismissed for insufficient service, and (3) failing to find an
ongoing violation of the Open Records Act and, instead, concluding that same was
irrelevant as to whether *res judicata* barred the action. Because we agree with
Sampson that the trial court erred in dismissing his complaint, we reverse.

---

[1] *See* OCGA § 50-18-70 *et seq*.

The record reflects that Sampson filed suit against the DJJ, alleging violations of the Open Records Act with regard to more than 20 requests for records from different juvenile-detention centers. Sampson asked that the trial court issue an injunction ordering production of the requested documents, a declaration that the DJJ's alleged failure to respond was unlawful, as well as an award of attorney fees and expenses.

The DJJ filed a special appearance and motion to dismiss, in which it contended that Sampson was the attorney who represented plaintiffs in a virtually identical action against a DJJ staff attorney with regard to the very same Open Records Act requests, which had previously been dismissed by the trial court. The DJJ contended that, as the attorney for the prior plaintiffs, Sampson was on notice for more than 30 days prior to the dismissal order in the previous action that the plaintiffs lacked standing to bring the claim and that the DJJ staff attorney was an improper party. The trial court ultimately found the same in its decision to dismiss the prior action, concluding that the action was initiated "without substantial justification." Accordingly, the DJJ argued that Sampson's action was barred by *res judicata*. The DJJ further contended that the action should be dismissed for failure to properly serve the DJJ, as well as for failure to state a claim upon which relief could be granted.

2

The trial court granted the DJJ's motion to dismiss Sampson's action, finding that *res judicata* applied to bar the action and that Sampson failed to properly serve the DJJ. Sampson now appeals the trial court's dismissal of his action, which we review *de novo*.[2]

1. Sampson first contends that the trial court erred in finding that the doctrine of *res judicata* barred his action because (1) there is no privity between the parties and (2) the cause of action is not identical. We agree that there is no privity between the plaintiffs in the prior action and the current action and, accordingly, *res judicata* cannot bar this lawsuit.[3]

---

[2] *See Lee v. Owenby & Assocs., Inc.*, 279 Ga. App. 446, 447 (1) (631 SE2d 478) (2006) ("We review de novo the grant of a motion to dismiss.").

[3] Because we hold that there is no privity between the plaintiffs, we need not address Sampson's remaining contentions as to why *res judicata* should not apply. And because we reverse the trial court's ruling on this ground, we also need not address Sampson's third enumeration of error, which is that the trial court erred in failing to address whether the DJJ engaged in an ongoing Open Records Act violation when the trial court ended its inquiry on grounds of *res judicata*. Suffice it to say, as a general rule, an appellate court should avoid deciding issues that are unnecessary to the resolution of the suit at hand. *See Johnson v. Morris*, 557 P.2d 1299, 1305 (Wash. 1976) ("As a general rule, this court will decide only such questions as are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity . . . .").

The record reflects that the prior action was brought by Quindarious Fleming and Demarko Moss against Andre Castaing in his official capacity as a staff attorney for the Georgia Department of Juvenile Justice for alleged violations of the Open Records Act regarding the same record requests at issue here. It is undisputed that Fleming and Moss were represented by Sampson in that action. And in granting Castaing's motion to dismiss, the trial court found that the record requests were made by Sampson and Demetra Ford, his co-counsel, and that no request indicated that it was made on behalf of Fleming or Moss. The trial court determined that the named plaintiffs in the prior action had interposed no Open Records Act requests and were instead "attempting to enforce requests interposed by other persons, more specifically, their attorneys in this action." Accordingly, the court concluded that because no existing law permitted a "derivative" prosecution of an Open Records Act request, the action required dismissal because Fleming and Moss lacked standing.[4]

---

[4] *See Warth v. Seldin*, 422 U.S. 490, 498 (II) (95 SCt 2197, 45 LEd2d 343) (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434 (1) (651 SE2d 36) (2007) ("In the absence of our own authority, we frequently have looked to United States Supreme Court precedent concerning Article III standing to resolve issues of standing to bring a claim in Georgia's courts.").

The trial court in the previous action went on to conclude that, even if Fleming and Moss had standing, they failed to sue the proper defendant, and, further, that "[d]espite the notice provided to them by Defendant's answer and motion to dismiss, [Fleming and Moss] [had] not sought to substitute a proper party plaintiff or defendant in this action in the more than thirty days that [had] since expired."[5] Thus, the trial court granted Castaing's motion to dismiss on May 1, 2013.

On May 14, 2013, Sampson filed the present action in the trial court with himself named as plaintiff and the DJJ named as defendant. And, as further described *supra*, the DJJ subsequently filed a motion to dismiss the complaint on, *inter alia*, the grounds of *res judicata*. The trial court granted the motion, which we now reverse.

In Georgia, OCGA § 9-12-40 represents a codification of the common-law doctrine of *res judicata*, and provides as follows:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause

---

[5] *See* OCGA § 9-11-17 (a) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.").

5

wherein the judgment was rendered until the judgment is reversed or set aside.

And the purpose of this doctrine is to prevent the "re-litigation of claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action."[6] Thus, three prerequisites must be satisfied before *res judicata* acts as a bar to subsequent litigation, those being the identity of the cause of action, identity of the parties or their privies, and a previous adjudication on the merits by a court of competent jurisdiction.[7] The party invoking the doctrine of *res judicata*, of course, bears the burden of proving the defense.[8]

Here, despite the trial court's determination to the contrary, the first prerequisite has not been and cannot be established in this case.[9] And as a result, the

---

[6] *Crowe v. Elder*, 290 Ga. 686, 688 (723 SE2d 428) (2012); *see also Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010) (same).

[7] *Crowe*, 290 Ga. at 688; *Brinson*, 287 Ga. at 486.

[8] *Sanders v. Trinity Universal Ins. Co.*, 285 Ga. App. 705, 707 (3) (647 SE2d 388) (2007); *see also Callaway v. Irvin*, 123 Ga. 344, 351 (4) (51 SE 477) (1905) ("Upon the party setting up an estoppel by judgment rests the burden of proving it.").

[9] We note that both below and on appeal, the DJJ's sole argument in support of this prerequisite was that the plaintiffs in both suits were in privity because, as the original plaintiffs' attorney, Sampson "claimed to make the open records requests on

DJJ is unable to satisfy its burden of proof on this affirmative defense because, on the very face of the prior adjudication (and by the trial court's own determination in dismissing the action), there is no privity between Sampson and the named plaintiffs

---

behalf of the [original] [p]laintiffs in the first case as well as the second case." And the DJJ relied upon the factually and procedurally inapposite case of *Ruth v. Herrmann*, 291 Ga. App. 399, 401 (2008) (noting, for purposes of recovering under a lien, that an attorney was in privity with the client because "[i]t is a well-established principle that an attorney has the same right over an action, judgment or decree as his client had or might have had *for the amount due the attorney*" (emphasis supplied)), in support of this contention. In its motion to dismiss filed with the trial court (and also in its brief before this Court) the DJJ made *no* argument that Sampson was in privity with the prior plaintiffs by reason of *controlling* the prior litigation. We are cognizant of the fact that some jurisdictions consider an attorney to be in privity with a former client for purposes of *res judicata* due to the control the attorney asserted over the prior litigation. *See, e.g.*, *Kinsky v. 154 Land Co., LLC*, 371 SW3d 108, 113 (Mo. Ct. App. 2012); *Smith v. Jenkins*, 562 A2d 610, 615-16 (II) (A) (2) (D.C. App. 1989); Restatement (Second) of Judgments § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). *But see* Restatement (Second) of Judgments § 39 cmt. e (1982) ("A person who undertakes to control litigation on behalf of another is affected only in the capacity in which he does so. Thus, a trustee who takes control of litigation involving another in order to protect the trust is not on that account bound in a subsequent action in which he appears in his individual capacity . . . ."). However, because this argument was not raised before the trial court in the DJJ's effort to prove its affirmative defense, nor was it raised by the DJJ in its appellee brief, we do not address it under the unique circumstances of this case and leave consideration of that question for another day.

7

in the prior suit.[10] The trial court dismissed the prior action, *inter alia*, on the basis that Fleming and Moss lacked standing to pursue an alleged violation of the Open Records Act based on record requests made by Sampson.[11]

And in looking to the identity of parties for purposes of *res judicata*, our Supreme Court has held that "it is not required that all the parties on the respective sides of the litigation in the two cases shall have been identical, but it is sufficient as to identity of parties if those by and against whom the defense of res judicata is invoked in the latter case were real parties at interest or privies as to the controversy

[10] *Cf. Waggaman v. Franklin Life Ins. Co.*, 265 Ga. 565, 566 (1) (458 SE2d 826) (1995) ("As [the proponent of the defense] clearly showed that [she] and the party against whom it was asserted were the parties engaged in the earlier action, the trial court did not err when it sustained the affirmative defense against the attack on identity of parties."). *See generally* Comment, "Privity and Mutuality in the Doctrine of Res Judicata, 35 Yale L.J. 607, 608-09 (1926) (noting that "[a] privy within this rule must be one who claims an interest in the subject-matter affected by the judgment through or under one of the parties," the concepts of privity and mutuality are "of ancient origin, being found in the Year Books and in the Roman law," and that "[n]o satisfactory explanation for [the privity requirement] has been discovered other than some supposed and unprovable principle of 'natural' fairness").

[11] We make no determination as to the appropriateness of this conclusion by the trial court because that order of dismissal is not on appeal before us. And in that regard, we note that Fleming and Moss did not appeal the trial court's dismissal of their action and, as to Fleming and Moss, that dismissal is indeed *res judicata. See Laosebikan v. Lakemont Community Ass'n*, 302 Ga. App. 220, 221 (1) (690 SE2d 505) (2010) (holding that unappealed ruling in lower court was conclusive and "any claim raised concerning the merits of that ruling is barred by res judicata").

in the former case."[12] Indeed, just as a State may not, consistent with the dictates of the Fourteenth Amendment to the United States Constitution, "enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard, so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein."[13] And while there is a recognized exception to this general rule when, "in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party,"[14] the trial court in the prior action determined that Fleming and Moss could not represent *any* interest in that proceeding. As such, because the trial court made this determination, Fleming and Moss cannot be said to be in privity with Sampson, and *res judicata* does not bar Sampson's action in the case *sub judice*.[15]

---

[12] *Darling Stores Corp. v. Beatus*, 199 Ga. 215, 215 (3) (33 SE2d 701) (1945).

[13] *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 (II) n.4 (116 SCt 1761, 135 LE2d 76) (1996) (citations omitted); *accord Postal Telegraph Cable Co. v. City of Newport, Ky.*, 247 U.S. 464, 476 (38 SCt 566, 62 LEd 1215) (1918).

[14] *Richards*, 517 U.S. at 798 (II) (punctuation omitted).

[15] Cf. *In re Cutty's-Gurnee, Inc.*, 133 B.R. 969, 973 (2) (Bank. N.D. Ill. 1991) (applying principles of *res judicata* and "finding that there is no such identity since Great American lacked standing to litigate the Trustee's avoidance claim as his agent

9

2. Sampson further contends that the trial court erred in dismissing his complaint due to insufficient process. The DJJ moved to dismiss Sampson's complaint on the ground that the service copy of the complaint lacked pages containing five paragraphs and the signature page with prayers for relief, and the trial court also granted dismissal on this ground pursuant to OCGA § 9-11-12 (b) (4).

To begin with, we note the distinction between OCGA § 9-11-12 (b) (4) and OCGA § 9-11-12 (b) (5), the former permitting dismissal for insufficient process and the latter for insufficient *service of* process. Neither the DJJ in its appellate brief nor the trial court in its order of dismissal cite to any case in support of the proposition that a motion to dismiss may be granted pursuant to OCGA § 9-11-12 (b) (4) when a service-copy of a complaint is missing pages. And this Court's own research has discovered no such authority.[16] Instead, rather than deal with irregularities in a complaint, insufficiency of process challenges irregularities in the contents of the

and this Court expressly held in the prior proceeding that it could not decide the avoidance issue on the merits absent some action by the Trustee").

[16] *But see Faulknor v. Virgin Islands*, Case No. ST–13–CV– 137, 2014 WL 773055, at *3 (I) (V.I. Feb. 19, 2014) (discussing a motion to dismiss based on missing page in complaint while citing to Rule 12 (b) (4) but analyzing in terms of "insufficient *service of* process").

summons alone,[17] whereas "insufficient service of process deals with the manner of delivery of summons *and* complaint."[18] At least insofar as federal courts are concerned, "[f]or sufficiency of process, a summons satisfies due process when it complies with the provisions of [Federal Rule of Civil Procedure Rule 4 (b)] or any

---

[17] *See Fairfax v. Wells Fargo Bank, N.A.*, 312 Ga. App. 171, 173-74 (2) (718 SE2d 16) (2011) ("Any deficiency in the summons is in the nature of the defense of 'insufficiency of process.'"); *accord In re Endeavor Highrise, L.P.*, 432 B.R. 583, 667 (iii) (Bank. S.D. Tex. 2010) ("Insufficiency of process challenges irregularities in contents of summons."). *Cf. Brown v. Way*, 33 Ga. 190, 191 (1862) ("Process is a mandatory precept, issuing from a Court. The mandate is set forth in the body of the instrument, which we call a process, and this may be printed, or written out by any scrivener, but it is the signature of the proper officer which gives it efficacy. From the instrument itself, the person to whom it is addressed, or who is to be affected by it, learns what is required of him; from the official signature he learns that it emanates from a Court authorized so to command him."); PHILIP WELTNER II, GEORGIA PROCESS & SERVICE § 1-1 (1993 ed.) ("Prior to the enactment of the Civil Practice Act of 1966, the summons was known as 'process.'"); RICHARD C. RUSKELL, GEORGIA PRACTICE & PROCEDURE § 8:1 (2013-2014 ed.) ("Technically, . . . process is the means whereby the court compels the appearance of a defendant before it for compliance with its demands. The term 'process,' in fact, includes any and every writ, rule, order, notice, or decree, including any process of execution, that may issue in or upon any action, suit, or legal proceedings. The object and purpose of process is to bring the defendant into court.").

[18] *In re Endeavor Highrise, L.P.*, 432 B.R. at 667 (iii); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litigation*, 767 FSupp2d 880, 892 (2) n.5 (N.D. Ill. 2011) ("Essentially, a motion under 12 (b) (4) challenges the form of the summons, whereas a 12 (b) (5) motion challenges the service of the summons.").

other applicable provision that deals specifically with the content of the summons."[19]

Accordingly, the trial court erred in granting the motion to dismiss on the ground of insufficient process when the DJJ made no allegation as to any insufficiency in the summons.[20]

Nevertheless, service of an incomplete complaint can certainly constitute insufficient service of process.[21] Indeed, a defendant is required to admit or deny each allegation contained within a complaint, and when a defendant fails to clearly deny an allegation, the defendant is deemed to have admitted same.[22] Suffice it to say, a

---

[19] *In re Endeavor Highrise*, 432 B.R. at 667 (iii) (punctuation omitted).

[20] *Cf. In re Endeavor Highrise, L.P.*, 432 B.R. at 667 (iii) (finding that process was sufficient when answer "[did] not allege any defect in the summons which would prevent it from complying with [Federal Rule of Civil Procedure 4 (b)] or any other applicable provision that deals specifically with the content of the summons").

[21] *Compare Cherry v. Spence*, 249 F.R.D. 226, 229 (II) (E.D. N.C. 2008) (dismissing action when plaintiff served defendants with only one page of the complaint), *with Young v. Car Rental Claims, Inc.*, 255 FSupp2d 1149, 1153 (I) (D. Haw. 2003) (declining to dismiss action when defendants were initially served with partial complaint but were later served with complete amended complaint and "suffered no great prejudice").

[22] *See* OCGA § 9-11-8 (b) ("A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies."); *see also Cherry*, 249 F.R.D. at 229 (II) ("This rule is important, because a defendant is required to admit or deny each allegation contained in the complaint, and where a defendant fails to clearly deny an allegation, he is

12

defendant who does not possess a complete copy of the complaint cannot possibly admit or deny each allegation contained therein.[23] Accordingly, it is certainly conceivable that service of an incomplete complaint amounts to insufficient service of process.[24]

A court's finding of insufficient service of process is affirmed absent a showing of an abuse of discretion, and we will not disturb the trial court's findings if they are supported by any evidence.[25] But when a defendant in a lawsuit challenges the sufficiency of service, the defendant bears the burden of showing improper service.[26]

deemed to have admitted it.").

[23] *Cherry*, 249 F.R.D. at 229 (II); *see also Am. Mobile Imaging, Inc. v. Miles*, 260 Ga. App. 877, 878 (581 SE2d 396) (2003) ("Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action *and afford them an opportunity to present their objections*." (punctuation omitted) (emphasis supplied)).

[24] *See Furness v. Mills*, No. 2:12-cv-00256 DN, 2013 WL 3995258, at *3, *4 (D. Utah Aug. 5, 2013) (acknowledging dearth of case law on this issue but concluding that "[a] complaint missing a page of alleged facts and the beginning of the first claim would likely not constitute sufficient service of process in the Utah courts").

[25] *See Nesmith v. Landmark Dodge, Inc.*, 302 Ga. App. 315, 315 (691 SE2d 240) (2010) ("Absent a showing of an abuse of discretion, a trial court's finding of insufficient service of process must be affirmed. Those findings will not be disturbed on appellate review when supported by any evidence." (punctuation omitted)).

[26] *Nesmith*, 302 Ga. App. at 316 (punctuation omitted).

13

And although a return of service provides *prima facie* proof of proper service, "it is not conclusive and may be traversed by proof that such facts are untrue."[27] Nevertheless, the return of service can only be set aside "upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit."[28]

And here, as the party challenging the sufficiency of service of process, the DJJ was required to support its contention with such evidence.[29] This, it did not do. To be sure, attached to DJJ's motion to dismiss was a copy of the service-copy complaint with missing pages; however, the DJJ did not attach an affidavit of the person who received service on its behalf.[30] Accordingly, the DJJ did not submit sufficient

---

[27] *Oglesby v. Deal*, 311 Ga. App. 622, 626 (1) (716 SE2d 749) (2011) (punctuation omitted).

[28] *Id.* (punctuation omitted).

[29] *See Nazli v. Scott*, 203 Ga. App. 523, 524 (2) (417 SE2d 187) (1992) ("Appellants were required to support their defenses of insufficiency of process and service of process with evidence.").

[30] *See Patterson v. Brown*, Civil No. 3:06cv476, 2008 WL 219965, at *9 (III) (C) (1) (W.D. N.C. 2008) (defendants who claimed insufficient service by receipt of incomplete complaints attached to motion to dismiss affidavits averring same in addition to the partial copies), *reversed on other grounds by Patterson v. Whitlock*, 392 Fed. Appx. 185, 191 (II) (4th Cir. 2010) (holding that defendants waived right to assert insufficient service of process with incomplete complaint). *Cf. Bohorquez*

evidence to show improper service of process, and we will not affirm the trial court's

dismissal under the right-for-any-reason standard.[31]

For all of the foregoing reasons, we reverse the trial court's judgment.

*Judgment reversed. Miller, J., concurs. Doyle, P. J., concurs fully in Division 1 and concurs in judgment only as to Division 2.*

---

*v. Strother*, 287 Ga. App. 98, 99 (650 SE2d 765) (2007) (recognizing that "'a return of service may be impeached by sworn statements made on personal knowledge'" and citing cases in which sworn affidavits provided sufficient evidence to contradict return of service).

[31] *See C.C. Leasing Corp. v. Bd. of Tax Assessors of Hall County*, 143 Ga. App. 520, 520 (239 SE2d 204) (1977) (affirming motion to dismiss when judgment was right for any reason).