**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 22, 2023**

# In the Court of Appeals of Georgia

A23A0614. FRANKLIN COUNTY v. WASSERMAN.

MARKLE, Judge.

Sherran Lynn Wasserman sought to sell property she owned in Franklin County. When Franklin County and its Board of Commissioners ("the Board") denied the prospective property buyer's application for a conditional use permit to construct poultry houses on the land, Wasserman filed an action against the Board, asserting violation of equal protection rights.[1] The County and the Board (collectively "the BOC") moved for summary judgment, and the trial court denied the motion. The BOC now appeals, arguing that the trial court erred by (1) denying its motion as to

---

[1] Wasserman also asserted claims for violation of due process rights, injunctive and mandamus relief, and interference with her contractual rights, and she sought to invalidate the zoning decision. She later conceded, however, that the equal protection claims are the only ones upon which she was proceeding.

Wasserman's equal protection claim based on racial discrimination because Wasserman lacked standing to assert the claim on behalf of the buyer; (2) denying its motion as to Wasserman's equal protection "class of one" claim because she failed to establish a prima facie case to make this claim; and (3) relying on hearsay and other inadmissible evidence. After a thorough review of the record, we conclude that Wasserman lacked standing to bring an equal protection claim as a protected class on behalf of the buyer. We further conclude that Wasserman's equal protection "class of one" claim fails because she cannot establish a prima facie showing for this claim. Accordingly, we reverse the trial court's order, and remand the case with instructions for the trial court to enter summary judgment in the BOC's favor.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56,[Appellant], as the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *Lowery v. Noodle Life*, 363 Ga. App. 1 (869 SE2d 600) (2022).

So viewed, the record shows that Wasserman entered into an agreement to sell her property to a buyer, who is of Vietnamese descent, contingent upon the Board's approval of a conditional use permit ("CUP") allowing the buyer to build and operate poultry houses on the property. The Franklin County Planning Commission ("the Commission") initially approved the CUP application. However, Franklin County council members then sent a letter to the Commission and the Board, recommending that the CUP application for Wasserman's property be denied due to the property's close proximity to a neighboring school and recreation center. The Commission re-evaluated the CUP application,[2] and it ultimately recommended denying it based on the zoning regulation criteria and due to its possible adverse effect on neighboring lands. The Commission further recommended the CUP application be denied because it lacked certain required documents. The Board held a public hearing to discuss the pending CUP applications, including the one for Wasserman's property. In addition to those who opposed the Wasserman CUP application, Wasserman's counsel was permitted to present argument in support thereof. Thereafter, the Board voted to enact a moratorium as to future applications and to deny the Wasserman CUP application.

---

[2] At the same meeting, the Board considered four other applications. Three of the four other applicants were also persons of Vietnamese or Asian descent, and two of those three applications were approved.

3

Wasserman then filed suit against the BOC, asserting, among other claims, a violation of equal protection rights, both as a suspect class and a class of one, because the BOC's denial of the CUP application was racially based as the buyer was Vietnamese. The BOC filed a motion for summary judgment, raising the arguments asserted here on appeal.[3] Following a hearing and additional briefing, the trial court denied the BOC's motion, finding specifically that disputed facts existed as to Wasserman's standing, as well as to whether the buyer's application was similarly situated to other applications. The trial court certified its order for appellate review. We granted the application for interlocutory review, and this appeal followed.

1. First, we address the BOC's argument that the trial court erred in denying its summary judgment motion as to Wasserman's equal protection claim as a protected class because Wasserman lacks standing to assert a claim on behalf of the buyer. We agree.

---

[3] In opposition to the motion, Wasserman filed the affidavit of a real estate agent, Chad Singleton, who averred, among other things, that many of the new poultry houses located in the county were owned and operated by persons of Vietnamese descent; a number of residents and council members opposed the buyer's CUP application and made derogatory comments about the buyer's ethnicity; the buyer's alleged wife was verbally assaulted after the meeting; and that the Board gave "arbitrary and discriminatory"reasons for denying the application. The BOC sought to have Singleton's affidavit stricken from the record, but the trial court denied the request and referenced the affidavit in its order.

In Georgia,

> [s]tanding is a jurisdictional prerequisite to a plaintiff's right to sue. A plaintiff with standing is necessary to invoke a court's judicial power to resolve a dispute, and the power of Georgia courts — as with any power possessed by a branch of state government — is conferred by our state Constitution.

(Citations and punctuation omitted.) *Sons of Confederate Veterans v. Henry County Bd. of Commrs.*, 315 Ga. 39, 44-45 (2) (a) (880 SE2d 168) (2022); see also *Perdue v. Barron*, No. A22A1528, __ Ga. App. __ (1) (__ SE2d __ (1)), (2023 WL 2420953, *3 (1) (2023).

> [A] plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction. Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated, and it is the person wishing to invoke a court's jurisdiction who must have standing.

(Citations and punctuation omitted.) *U-Haul Co. of Arizona v. Rutland*, 348 Ga. App. 738, 742-743 (1) (824 SE2d 644) (2019); see also *Perdue v. Lake*, 282 Ga. 348 (1) (647 SE2d 6) (2007). In order to have standing, a party must be able to show "(1) an injury in fact that is concrete and particularized (meaning it affects the plaintiff in a personal and individual way); (2) a causal connection between the injury and the conduct; and (3) the likelihood that the injury will be redressed with a favorable

decision." (Citations and punctuation omitted.) *Sons of Confederate Veterans*, 315 Ga. at 45 (2) (a). Additionally,

> [i]t is well established . . . that although constitutional rights must generally be asserted by the person to whom they belong, . . . a litigant may assert the rights of a third party in exceptional circumstances. To successfully establish third-party standing, a . . . litigant must have suffered an "injury in fact," thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

(Citations and punctuation omitted.) *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434-435 (1) (651 SE2d 36) (2007).

Here, the trial court determined that disputed issues of fact existed as to whether Wasserman incurred a direct economic injury as a result of discrimination against the buyer, with whom she had a contractual relationship, and whether the chair of the Commission interfered with the buyer's relationship with his poultry integrator such that it compromised his ability to exercise his own rights in this matter. Wasserman alleges that the BOC rejected the CUP application because the buyer was of Vietnamese descent, and that she was injured as a result because the sale

6

of her property was contingent upon approval of the application.[4] Wasserman, however, has not shown she has standing to bring a third-party racial discrimination claim on behalf of the buyer because she has not shown she had a close relationship to the buyer such that she could represent his interests. Wasserman admitted she never spoke to the buyer prior to the BOC's meeting and its denial of the CUP application, and that her prior communications with him were through the realtor. Thus, Wasserman only knew the buyer as a potential purchaser. Additionally, Wasserman admitted she had no involvement in applying for the CUP application, testifying the buyer applied for it, and she never even saw the application; she had no involvement in procuring a poultry integrator; and she did not even realize the sale of her property was contingent upon approval of the CUP application.[5] Moreover,

---

[4] To the extent Wasserman alleges she suffered an economic injury because the sale of her property never materialized due to the denial of the CUP application, any alleged injury based on loss of the sale of the property is a claim separate from, and incidental to, one the buyer could assert for racial discrimination based on a protected class. Moreover, as previously mentioned, Wasserman has conceded that the equal protection claims are the only ones upon which she was proceeding; she thus has abandoned any claim arising from an alleged injury based on interference with her contractual rights, and we will not address it. *Nusz v. Paulding County, Ga.*, 361 Ga. App. 131, 133 (1) (863 SE2d 384) (2021).

[5] To the extent Wasserman asserts that the buyer was acting as her agent in submitting the CUP application, this argument is unavailing. "The relation of principal and agent arises wherever one person, expressly or by implication,

Wasserman has not shown that the buyer was somehow unable to protect his own interests and bring his own equal protection claim as the person allegedly discriminated against. As such, Wasserman lacks standing to pursue an equal protection claim as a protected class on behalf of the buyer, and the trial court erred

authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. "An agency finding cannot be based upon the assumption that an agency relationship exists or upon an inference drawn from the alleged agent's actions." *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 26 (648 SE2d 430) (2007). As shown from the facts above, there is no evidence that the buyer was acting as her agent in applying for the CUP, or that he was acting on behalf of anyone else's interest but his own.

in denying the BOC's motion as to this issue.[6] *Feminist Women's Health Center*, 282 Ga. at 434-435 (1).

2. The BOC next argues that the trial court erred in denying its summary judgment motion at to Wasserman's equal protection class of one claim because she is not a member of a "class of one" for equal protection purposes; she has failed to show evidence of a similarly situated applicant who was treated differently; and the BOC had a rational basis for denying the CUP application. Again, we agree.

Unlike the claim addressed in Division 1, a plaintiff in an equal protection "class of one" claim "does not allege discrimination against a protected class or on

---

[6] The trial court relied on *Feminist Women's Health Center v. Burgess*, 282 Ga. 433 (651 SE2d 36) (2007) and *Powers v. Ohio*, 499 U. S. 400 (111 SCt 1364, 113 LE2d 411) (1991), in support of its conclusion that disputed facts exist as to Wasserman's standing. These cases, however, are factually distinguishable from the instant case. In *Feminist Women's Health Center*, the Court held that, due to the close relationship between doctor and patient and the privacy concerns surrounding obtaining abortion services, medical providers could assert third party standing to pursue the rights of their Medicaid patients seeking abortions. 282 Ga. at 436. Here, there is no comparable privacy issue — as it concerns the buyer's ethnicity — that would interfere with his ability to bring suit. And, in *Powers*, the Court determined that a criminal defendant could assert third party standing on behalf of a juror struck based on a race-based peremptory challenge because of the juror's lack of opportunity to be heard and the economic infeasibility of the juror pursuing litigation. 499 U. S. at 414-415. In the instant case, Wasserman has failed to show that the buyer has any such barriers to pursuing a discrimination claim on his own behalf as a member of a protected class. Thus, the trial court's reliance on these cases is unpersuasive.

9

account of membership in a particular group, but rather, asserts that [s]he has been treated differently from others similarly situated for arbitrary or irrational reasons." *Alford v. Consolidated Govt. of Columbus, Ga.*, 438 F. Appx. 837, 839 (II) (11th Cir. 2011). By asserting an equal protection "class of one" claim, a plaintiff "must demonstrate that [she was] treated differently than someone who is prima facie identical in all relevant respects." (Citation and emphasis omitted.) *Griffin Indus. v. Irvin*, 496 F3d 1189, 1205 (II) (A) (1) (11th Cir. 2007); *Leib v. Hillsborough County Public Transp. Comm.*, 558 F3d 1301, 1306-1307 (II) (11th Cir. 209).

Preterrmitting whether Wasserman has standing to pursue this claim, her claim fails because she has presented no evidence showing that the Board treated her CUP application any differently from other applications. The evidence shows instead that the Board considered four other applications for permits to build poultry houses. Three of the four other applicants were also persons of Vietnamese or Asian descent, and two of those three were approved.

Moreover, Wasserman has failed to proffer evidence of a similarly situated application that was prima facie identical to the buyer's. Rather, the evidence shows that the buyer's CUP application proposed construction of more poultry houses than others (12 in total) and in close proximity to a neighboring school and recreation

10

center, drawing staunch opposition from community members due to health and welfare concerns. Wasserman has presented no evidence that any of the other applications were identical to the buyer's. *Griffin Indus.*, 496 F3d at 1205 (II) (A) (1).

Finally, the BOC had a race-neutral, rational basis for denying the buyer's CUP application. After conducting work sessions and public hearings, there was evidence from which the BOC based its decision to deny the application. For instance, the BOC received concerns from city constituents that construction of the buyer's poultry house would generate noise, odor, water contamination, and rat infestation. The Commission evaluated the CUP application but ultimately decided to deny it based on the zoning regulations and, as mentioned previously, its possible adverse effects on neighboring lands. Thus, as a matter of law, the BOC had a rational basis for denying the application, and the trial court erred in denying the BOC's motion on this ground as well. *BFI Waste System of North America v. Dekalb County, GA.*, 303 FSupp.2d 1335, 1351-1353 (III) (A) (2) (b), (3) (N. D. Ga. 2004) (as a matter of law, county had a rational basis for denying the application for a landfill based on hearing testimony showing the potential negative impact landfill would have on community); see also *Corn v. City of Lauderdale Lakes*, 997 F2d 1369, 1389 (III) (D) (3) (11th Cir.

1993) (this Court may not "weigh and reappraise the factors considered or ignored" by a government entity in deciding upon zoning regulations).

Accordingly, based on the foregoing, we reverse the trial court's denial of the BOC's motion for summary judgment and remand the case with instructions for the trial court to enter summary judgment in its favor.

3. In light of the Divisions above, we need not address the merits of the BOC's remaining arguments.

*Judgment reversed and case remanded with direction. McFadden, P. J., and Brown, J., concur.*